NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:23-mj-00104** |
| **v.** | **GOVERNMENT'S MOTION FOR PRETRIAL DETENTION** |
| **AVERI ROSE DICKINSON,** | |
| **Defendant.** | |

The United States of America, through Natalie K. Wight, United States Attorney for the

District of Oregon, and Scott M. Kerin, Assistant United States Attorney, hereby asks the Court

to detain the defendant pending arraignment and trial.

The defendant was an armed drug dealer who has been selling drugs to kids for almost

three years – not only did she market and sell drugs to kids, but she also employed minors as

runners to help her deliver drugs.  Drug dealers selling to kids are a danger to the community.

Her sole means of support was from selling drugs and she used her residence in Damascus,

Oregon as her base of operations.  Based upon the nature of the crime the defendant is both a risk

**Government's Motion for Pretrial Detention**                                                    **Page 1**

of non-appearance at future court proceedings and a danger to the community and should be

detained.

**A.      Factual and Procedural Summary.**

The defendant was arrested yesterday and has been charged in a Criminal Complaint with

Distribution and Possession with the Intent to Distribute a Controlled Substance; Engaging in a

Criminal Conspiracy to Distribute and Possess with the Intent to Distribute a Controlled

Substance; and, Possession of a Firearm in Furtherance of a Drug Trafficking Crime, all in

violation of Title 21, United States Code, Sections 841(a)(1) and 846 and Title 18, United States

Code, Section 924(c).  The drug charges carry a maximum term of 20 years imprisonment.  The

Possession of a Firearm in Furtherance of a Drug Trafficking Crime charge carries a consecutive

mandatory minimum sentence of 5 years' imprisonment and a maximum term of Life

imprisonment.

For the past three years the defendant has been running a drug distribution service,

known as "Kiki's Delivery Service," that advertised and took orders via Telegram, Snapchat, and

Instagram for various drugs, to include cocaine, LSD, MDMA, ketamine, marijuana, and various

forms of pills – both real and counterfeit, to include real Oxycodone and counterfeit Xanax bars

(made with benzodiazepines).[1]  After an order was placed the defendant would either personally

deliver the drugs to the customer, have the customers come by and pick up the drugs from her

residence in Damascus, Oregon, or she would have a runner deliver the drugs to the customer.

The defendant used multiple runners to deliver her drugs – two of whom are 16 years old.  When

customers would come by her residence defendant would place the drugs under a ceramic statute

---

[1]      At some point in the past the defendant also sold counterfeit M30s (made with fentanyl),
although she did not appear to be recently selling these.

**Government's Motion for Pretrial Detention**                                          **Page 2**

on her front porch for the customer to retrieve and then leave the money.  Pictures of the

defendant's social media advertisements are below:



///

///

///



This current investigation was a joint effort by the Clackamas County Interagency Task

Force (CCITF), the Federal Bureau of Investigations (FBI), Portland Police Bureau (PPB), and

Homeland Security Investigations (HSI).  The investigation started after CCITF received

information earlier this year that defendant was believed to be a source of supply within the

chain of distribution that resulted in several juvenile drug overdoses.

///

**Government's Motion for Pretrial Detention**                                                    **Page 4**

As part of the investigation, on March 9, 2023, CCITF investigators conducted an Under Cover (UC) buy with the defendant.  Investigators ordered one hundred Xanax pills/bars and two Oxycodone pills from the defendant.  The defendant told investigators it would cost $340 dollars and she would send a runner to deliver the drugs.  Later that day, within Clackamas County, Oregon an individual delivered the drugs that investigators ordered from the defendant. Subsequent analysis by the DEA forensic laboratory confirmed that the Oxycodone pills were contained Oxycodone.  The DEA lab also reported that the purported Xanax bars were counterfeit and were made with Bromazolam, which an unscheduled benzodiazepine that is not approved for medical use and can lead to serious adverse effects, including death.  Below are pictures of the narcotics that were ordered from the defendant and delivered to investigators.

 

The defendant was aware that the Xanax bars were counterfeit and, in a social media post, noted that her Xanax bars were "Definitely the strongest benzodiazepine press in Oregon."

On June 14, 2023, investigators executed federal warrants on the defendant's residence in Damascus, Oregon and her vehicle.  During a post-*Miranda* interview, the defendant told investigators that they would find cocaine (a Schedule II controlled substance), ketamine (a

**Government's Motion for Pretrial Detention**                                                              **Page 5**

Schedule III controlled substance), marijuana, and prescription Xanax pills inside her residence and they were located inside her closet and some were stored inside a lunchbox. The defendant also said all the drugs inside the residence were hers and were the ones she advertised for delivery. The defendant also told investigators they would find a Glock firearm under her pillow and it was hers.

In searching the residence, inside the defendant's closet investigators found various controlled substances to include approximately eight (8) grams of cocaine, two (2) grams of ketamine, marijuana, and approximately 25 counterfeit Xanax bars. On a bookshelf in her room, agents found approximately $3,190 in cash. Pictures of the seized drugs and cash are below:



/// 

///

///





In searching the defendant's bedroom, under her pillow, investigators found a loaded

Glock 9mm firearm.  An extended magazine for the gun was found under her mattress.  The gun

is pictured below:

///

///

**Government's Motion for Pretrial Detention**                                                    **Page 7**



When asked about the gun, the defendant told investigators she had purchased the Glock firearm for $600 from a 16-year-old, who she knew had stolen it from his parents.  According to the defendant the firearm was purchased as a means for protection because people knew she was moving "product."  The defendant also told investigators that they would also find a bullet proof vest with ballistic plates that she kept as another form of protection.  Investigators know that firearms are considered "tools of the trade" by drug dealers and they often carry firearms as a means of protection against those who might try and rob them of their drugs or drug proceeds. Later during the search investigators also located a loaded AR-style assault rifle in the laundry room behind the washer.  The defendant referred to this as a "ghost gun."  The gun is pictured below:

///

///

///

**Government's Motion for Pretrial Detention**                                    **Page 8**



In defendant's car investigators located a ballistic vest, depicted below.  Ballistic plates

for a vest were found in defendant's bedroom.



///

///

///

**Government's Motion for Pretrial Detention**                                      **Page 9**



When asked about her drug dealing, the defendant informed investigators that she would

have a minimum of between 1 to 10 drug deliveries a day of various drugs and in various

amounts.  The defendant said she would also use drug runners about once a week to do

additional drug deliveries.  The defendant told investigators she had been dealing drugs for about

three years, but has been most active for the past two years.  She said she was known as the

"Only person who sells drugs in Clackamas" and utilized her social media accounts to advertise

her drug supply.  The defendant told investigators that she advertised to everyone and believed

about 50% of her cliental were juveniles and that she uses several juveniles as runners to deliver

her drugs.

The defendant told investigators that she used various social media platforms to advertise

her drug sales operating as "stoneysonly2" on Instagram, "Kiki's Delivery Service" on Telegram

and "Kiki" or "atg4578" on Snapchat.   The defendant advised investigators that she advertised

"goods" and "drugs" to include but not limited to marijuana, MDMA, cocaine, ketamine, pills,

molly, alcohol, and mushrooms.

**Government's Motion for Pretrial Detention** **Page 10**

When investigators informed the defendant about known overdoses she was suspected of being involved in, the defendant told them that she did not believe this was a result from her dealing because she would routinely test her own narcotics.  The defendant told investigators she would often test about 10 pills from a batch of 100 to see if it was laced with fentanyl and she told investigators that she never found an instance where one of the pills she was selling was laced with any fentanyl.  The defendant said she believed that one of the overdoses that was mentioned could have not been from her own supply because she too indigested the same type of pill and nothing occurred to her.

The defendant was arrested at her residence in Damascus, Oregon and she was paying $2,000 a month towards the mortgage – money that she admitted came from her drug sales.  For the last several years she admitted that her only legitimate employment was a short six month stint at a fast food restaurant.  She was living with her mother, who was present when the warrants were executed.  The defendant also admitted using prescription opioid medications, but none were found in the residence.  Investigators did find multiple empty prescription bottles.

The government seeks the defendant's detention as a danger to the community and a risk of nonappearance.

## B.      Applicable Law.

### 1.      Rules of Evidence Do Not Apply at Detention Hearing

The Federal Rules of Evidence do not apply in pretrial detention proceedings.  Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f).  Accordingly, both the government and the defense may present evidence by proffer or hearsay.  *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986); *see also United States v. Bibbs*, 488 F.Supp.2d 925, 925-26 (N.D.Cal. 2007).

///

**Government's Motion for Pretrial Detention**                                                    **Page 11**

## 2.       Rebuttable Presumption of Detention

Under the Bail Reform Act, 18 U.S.C. § 3142, *et seq.*, which governs the detention of a

defendant pending trial, the Court shall order a defendant detained if, after a hearing, it finds that

"no condition or combination of conditions will reasonably assure the appearance of the person

as required and the safety of any other person and the community."   Generally, the United States

bears the burden of establishing danger to the community by clear and convincing evidence; risk

of flight need only be proved by a preponderance of the evidence.  *United States v. Aitken*, 898

F.2d 104, 107 (9th Cir. 1990); *Winsor*, 785 F.2d at 757.

Where there is probable cause to believe that the defendant committed a Title 21

narcotics offense and the maximum penalty for that offense is a term of imprisonment of 10

years or more, or a violation of Title 18, United States Code, Section 924(c), the law creates a

presumption that no condition or combination of conditions of release will reasonably assure the

appearance of the person as required and the safety of the community.  18 U.S.C. §

3142(e)(3)(A) and (B).  In such a case, the burden of proof shifts to the defendant to rebut the

presumption of detention.  *United States v. Carbone*, 793 F.2d 559, 560 (3rd Cir. 1986).  The

criminal charges in this case create a presumption of pretrial detention.

Concern about the safety of the community is not limited to concerns about violence;

rather it is the *risk* that a defendant will continue committing crimes while on release, such as

drug dealing, that warrants their continued detention as a danger to the community:

> [T]he language referring to the safety of the community refers to the
> danger that the defendant **might** engage in criminal activity to the
> detriment of the community.  The committee intends that the concerns
> about safety be given a broader construction than merely danger of harm
> involving physical violence.  This principal was recently endorsed in
> *United States v. Provenzano and Andretta*, in which it was held that the
> concept of 'danger' . . . extended to nonphysical harms such as corrupting
> a union.  **The committee also emphasizes that the risk that a defendant**

> **will continue to engage in drug trafficking constitutes a danger to the
> "safety of any other person or the community."**

S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N 3182, 3195
(Bail Reform Act)(emphasis added); *see also United States v. Hare*, 873 F.2d 796, 798-99 (5th
Cir.1989)(Congress has determined "that drug offenders pose a special risk of flight and
dangerousness to society.").

The Senate Report further explained *why* they created the presumption that there was no

condition or combination of conditions of release that will reasonably assure the appearance of

drug dealers or the safety of the community:

> These [the crimes outlined in 18 U.S.C. § 3142(e)] are serious and
> dangerous federal offenses.  The drug offenses involve either trafficking in
> opiates or narcotic drugs, or trafficking in large amounts of other types of
> controlled substances.  It is well known that drug trafficking is carried on
> to an unusual degree by persons engaged in continuing patterns of
> criminal activity.  Persons charged with major drug felonies are often in
> the business of importing or distributing dangerous drugs, and thus,
> **because of the nature of the criminal activity with which they are
> charged, they pose a significant risk of pretrial recidivism**.

S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3203
(Bail Reform Act) (emphasis added).

The presumption in favor of detention, as both a flight risk and danger to the community,

does not vanish if a defendant comes forward with some evidence to rebut it, but rather it

remains an evidentiary factor to be evaluated.  *United States v. Jessup*, 757 F.2d 378, 384 (1st

Cir.1985); *see also United States v. Rueben*, 974 F.2d 580, 586 (5th Cir.1992); *United States v.

Rodriguez*, 950 F.2d 85, 88 (2nd Cir.1991); *United States v. Hare*, 873 F.2d 796, 798 (5th

Cir.1989).  Were the presumption to vanish, "courts would be giving too little deference to

Congress' findings regarding this class." *United States v. Martir*, 782 F.2d 1141, 1144 (2nd

Cir.1986).

**Government's Motion for Pretrial Detention**          **Page 13**

The degree of danger posed by a defendant charged with narcotics trafficking is critical. *United States v. Leon*, 766 F.2d 77, 81 (2nd Cir. 1985). To determine that degree and decide if a defendant should be detained pending trial, a judicial officer must look to the nature and circumstances of the crime charged; whether the crime involved violence or drugs; the personal history of the person, the seriousness of the danger posed by the person's release; and, the evidence of the individual's guilt. *Id.* Evidence of defendant's family ties in the area, residence in the community and employment history should have no bearing on the court's determination of dangerousness and cannot rebut the presumption that arises under the statute. *See* S. Rep. No. 225, 98th Cong., 1st Sess. 24 (1983) (minimizing community ties and pointing to the "growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community.").

If the defendant proffers evidence to initially rebut the presumption of dangerousness or risk of non-appearance, the Court should then examine the following four factors in deciding whether release is appropriate:

> (1)    the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance . . . ;
>
> (2)    the weight of the evidence against the person;
>
> (3)    the history and characteristics of the person, including –
>
>> (A)    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings; and
>>
>> (B)    whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal . . . ; and

**Government's Motion for Pretrial Detention**                                      **Page 14**

(4)      the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g).

**C.      Factors Supporting Detention.**

The defendant is an armed drug dealer who, for the past three years, was marketing and selling dangerous drugs to kids.  Drug dealers selling to kids are a danger to community.  Armed drug dealers are a danger to the community.  The defendant's criminal conduct demonstrates she is a danger to the community and a risk of nonappearance and she should be detained pending trial.

**1.      Nature and Circumstances of the Offense.**

The defendant, an armed drug dealer, marketed and sold drugs to kids.  Over the past three years the defendant has advertised and sold cocaine, MDMA, ketamine, Oxycodone, and counterfeit Xanax bars made with Bromazolam, an unscheduled benzodiazepine that is not approved for medical use and can lead to serious adverse effects, including death.  She estimates that 50 percent of her clients were kids.  Drug dealing, especially to kids, is incredibly destructive to the community.  Using kids as drug runners is incredibly dangerous to those kids and shows a wanton disregard for their safety.  Additionally, a drug dealer possessing firearms as protection does not guarantee protection, but rather only increases the risks to the community.

Drug dealers like the defendant are exactly the people Congress warned us about and why they created the presumption of detention in these cases.  Drug dealers historically make their living from selling drugs and are prone to go back to it when they are released from custody.  That high risk of pretrial recidivism warrants the defendant's continued pretrial detention.

///

///

**Government's Motion for Pretrial Detention**                                                    **Page 15**

2.      **Weight of the Evidence.**

The weight of the evidence against the defendant is extremely strong and supports her continued detention.  The defendant was advertising drugs on various social media platforms, investigators bought drugs from her, investigators found drugs and guns inside her residence, and the defendant made numerous admissions.  The case against the defendant is strong and she should be detained.

3.      **History and Characteristics of the Defendant.**

The history and characteristics of the defendant also warrants her pretrial detention.  The defendant was an active drug dealer in Clackamas County, Oregon.  She has been actively dealing drugs for the past three years and that is how she supported herself.  She should be detained.

4.      **Nature and Seriousness of the Danger to the Community.**

The defendant's drug dealing activities, by themselves, are extremely serious.  Given the presumption of detention that comes along with the charges, Congress has recognized the very serious risk that drug dealers like the defendant pose to the community and the risk that they will go back to drug dealing even while on pretrial release.  The defendant sold very dangerous drugs to kids – the risk of her doing so again is too high to bear.  There is simply no condition or combination of conditions that the Court will impose that will mitigate the risk that the defendant will go back to distributing drugs within the community.  The defendant should be detained.

## Conclusion

For the reasons set forth herein, we respectfully request that the Court continue to detain the defendant pending her arraignment and trial and find she poses an unacceptable risk of non-appearance at future court hearings and is a danger to the community.

**Government's Motion for Pretrial Detention**                                          **Page 16**

We ask the Court to find that:

- The charged offenses create a rebuttable presumption in 18 U.S.C. § 3142(e) that no combination of conditions will (1) reasonable assure the safety of the community and (2) reasonably assure the appearance of the defendant as required.

- The defendant has not rebutted, by sufficient evidence to the contrary, the presumption of detention provided in 18 U.S.C. 3142(e).

- Furthermore, due to the nature of the offenses and the extreme dangers posed by the defendant's drug trafficking and her possession of firearms in furtherance of her drug dealing, there is no condition or combination of conditions that will reasonably assure the safety of other persons and the community if the defendant were released.

- Due to the weight of the evidence and the defendant's personal history and characteristics, including the potential penalties she is facing on the current charges, no condition or combination of conditions will reasonably assure the appearance of the defendant at future court hearings as required if released from custody.

Based upon the above findings, the defendant should be detained pending trial.

Dated:  June 15, 2023.                                    Respectfully submitted,

                                                          NATALIE K. WIGHT
                                                          United States Attorney


                                                          /s/ *Scott Kerin*

                                                          SCOTT M. KERIN, OSB # 965128
                                                          Assistant United States Attorney